**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 1:22-CR-8 (LAG) |
| | : | |
| DECARLO WILLIAMS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### ORDER

Before the Court are Defendant's Motion to Suppress and Motion for an Evidentiary Hearing (Doc. 29), Amended Motion to Suppress Addressing Issue of Standing (Doc. 33), and Motion to Compel the Government to Reveal Statements Made to Law Enforcement by Jackie Gonzales (Doc. 35). For the reasons below, Defendant's Motions are **DENIED**.

### BACKGROUND

On May 10, 2022, Defendant Decarlo Williams was indicted with one count of possession of cocaine with intent to distribute. (Doc. 1 at 1). On September 27, 2022, Defendant filed a Motion to Suppress and Motion for an Evidentiary Hearing. (Doc. 29). Therein, Defendant seeks to suppress evidence obtained in a search of two packages: (1) U.S. Priority Mail Parcel addressed to Karlo Sims, Tracking Number 9505 5132 7392 1146 3206 80; and (2) U.S. Priority Mail Parcel addressed to Brenda Sims, Tracking Number 9505 5146 2351 1145 2193 75. (*Id.* at 1–4). In affidavits supporting search warrant applications for the packages, U.S. Postal Inspector Russell J. Tabb affirmed that he had probable cause to believe the packages contained evidence of controlled substances violations. (Doc. 30-1 at 4; Doc. 30-3 at 4). Inspector Tabb described each package in the affidavits, noting that both packages identified Lynn Gonzales of Harlingen, Texas as the sender, and both listed 539 12th Avenue, Dawson, Georgia as the delivery address for Brenda Sims and Karlo Sims. (Doc. 30-1 ¶¶ 4, 5; Doc. 30-3 ¶¶ 4, 5). The return labels on the packages, however, provided two different street addresses for Gonzales. (Doc. 30-1

¶ 4; Doc. 30-3 ¶ 5). Inspector Tabbs stated that he "conducted a public records search, using the Clear database," for all three individuals but "was not able to associate" Lynn Gonzales with either of the return addresses in Harlingen, Texas; nor could he associate Brenda Sims or Karlo Sims with the delivery address in Dawson, Georgia. (Doc. 30-1 ¶ 6; Doc. 30-3 ¶ 6).

On May 28, 2021, the Magistrate Judge issued search warrants for both packages. (Doc. 30-1 at 1; Doc. 30-3 at 1). When agents searched the packages, they discovered approximately 16 ounces of cocaine in the package addressed to Brenda Sims and approximately 21 ounces of cocaine in the package addressed to Karlo Sims. (Doc. 30 at 2; Doc. 29 at 2). After finding cocaine in both packages, agents planned a controlled delivery of the packages for June 1, 2021. (Doc. 30 at 2). Inspector Tabb posed as a mail carrier and attempted to deliver the packages to the house at 539 12th Avenue. (*Id.*; Doc. 35 at 2). When no one answered his knock on the front door, Inspector Tabb left a note advising the occupants that a delivery attempt had been made and that the packages would be held at the nearby post office for pickup. (Doc. 30 at 2). Shortly after Inspector Tabb's attempted delivery, agents observed Defendant drive up to the house, take the note from the door, drive to the post office, and walk inside. (*Id.*; Doc. 35 at 2). Defendant exited the post office with both packages. (Doc. 30 at 2–3; Doc. 35 at 2). Agents then arrested Defendant and retrieved the packages. (Doc. 30 at 3).

In the Motion to Suppress, Defendant argues that the search of the packages violated his Fourth Amendment rights and thus "all evidence, statements, and observations that were obtained as the result of the search" should be suppressed. (Doc. 29 at 1, 5–6). The Government responded to Defendant's Motion to Suppress on October 14, 2022. (Doc. 30). After reviewing Defendant's Motion and the Government's Response, the Court entered an Order on October 18, 2022 granting Defendant leave to amend his Motion. (Doc. 31). The Court explained that "Defendant's Motion fail[ed] to allege facts establishing that Defendant had a reasonable expectation of privacy in the subject mail," but it would "allow Defendant the opportunity to amend his motion to 'advance[] [a] concrete foundation for standing'" to challenge the search. (*Id.* at 2 (citation omitted)).

2

Defendant filed an Amended Motion to Suppress Addressing Issue of Standing on October 19, 2022, and the Government responded on October 21, 2022. (Docs. 32–34). Defendant also filed a Motion to Compel the Government to Reveal Statements Made to Law Enforcement by Jackie Gonzales on October 21, 2022. (Doc. 35). In the Motion to Compel, Defendant asserts that statements Gonzales made to law enforcement "are critical" to his standing to challenge the search of the packages. (*Id.* at 3–5). Defendant asks the Court to "order the [G]overnment to provide any statements made by Ms. Gonzales" and "produce any and all records related to any such statements." (*Id.*).

An evidentiary hearing was held on October 24, 2022. (Doc. 36). During the hearing, Defendant presented three pieces of mail as evidence and offered the testimony of Mark Tracey, an investigator at the Federal Defender's Office. (*See* Doc. 44). Tracey stated that as part of the investigation of Defendant's case, he interviewed Defendant's grandmother at 539 12th Avenue, her residence in Dawson, Georgia. Tracey testified that when he asked if Defendant received mail there, Defendant's grandmother provided the three letters submitted at the hearing. (*See* Doc. 44). The letters were addressed to Defendant—"Decarlo Shadon Williams," "De'carlo Williams," and "Decarlo Williams"—at 539 12th Ave. N.E., Dawson, Georgia, and were sent from the Georgia Department of Driver Services, an automobile insurance company, and a casino rewards program. (Docs. 44-1, 44-2, 44-3). Defendant asked the Court to defer ruling on the issue of standing until his Motion to Compel was resolved, as he believed the materials sought in that Motion would provide further evidence of his standing to challenge the search of the packages. (*See* Doc. 35 at 4–5). The Government stated that while it had not yet responded to the Motion to Compel—filed three days before the hearing—it was prepared to submit an investigatory summary of law enforcement's interview of Gonazles to assist the Court's evaluation of the Motion to Compel. (*See* Doc. 43). The investigative summary was admitted under seal.[1] (Doc. 43-1). Following the hearing, the Court reviewed, in camera,

---

[1] On November 14, 2022, the Court entered a Protective Order allowing Gonzales to consent "to be interviewed by the defense team without being in violation of any confidentiality agreement made pursuant to her proffer" with the Government. (Doc. 42 at 1).

3

the investigative summary and complete audio recordings of Gonzales' proffer interview provided by the Government.

## DISCUSSION

As discussed below, Defendant is not entitled to the requested discovery under Federal Rule of Criminal Procedure 16 or *Brady v. Maryland*, 363 U.S. 83 (1963). Furthermore, Defendant has failed to establish Fourth Amendment standing to seek suppression. Thus, both Motions fail.

**I.    Motion to Compel**

In the Motion to Compel, Defendant argues that the Government is obligated to disclose Gonzales' statements to law enforcement under Federal Rule of Criminal Procedure 16 or the Supreme Court's decision in *Brady v. Maryland*, 363 U.S. 83 (1963). (Doc. 35 at 3–5).[2] At the October 24, 2022 hearing, the Government argued that it has no duty to disclose Gonzales' statements under Rule 16 or *Brady*. Defendant speculates that Gonzales' statements either establish Defendant's standing or exculpates Defendant. (Doc. 35 at 3). Specifically, Defendant contends that if Gonzales told law enforcement Defendant was the intended recipient of the packages, her statements would "clearly establish [his] privacy interest in the packages searched by law enforcement" and support his standing to challenge the search. (*Id.*). Gonzales' statements would therefore be "material to preparing [his] defense" and discoverable under Federal Rule of Criminal Procedure 16(a)(1)(E)(i). (*Id.* at 3–4). Alternatively, if "Gonzales stated to law enforcement that [Defendant] was not the intended recipient of the packages," Defendant argues that the statements are "exculpatory information that is discoverable under *Brady* or its progeny." (*Id.* at 3). The Court's in camera review of the interview recordings establishes that Gonzales never stated that Defendant was the intended recipient of the packages mailed to Brenda Sims or Karlo Sims. Nor did Gonzales state that Defendant was not the intended recipient of the packages.

---

[2]   At the October 24, 2022 evidentiary hearing, the Court granted Defendant leave to submit any supplemental authority supporting production of Gonzales' statements. Defendant has not provided any such authority. (*See* Docket).

4

### A. Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense[.]

Defendant has the burden of establishing that any such evidence is "material to the preparation of [his] defense" within the meaning of Rule 16. *See United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003). To the extent the discovery sought arguably is relevant to the issue of standing and Defendant's Motion to Suppress, it is not material to the preparation of his defense under Rule 16. (*See* Doc. 35 at 3–5). In *United States v. Armstrong*, the Supreme Court considered whether Rule 16 applied to discovery of evidence related to a defendant's selective prosecution claim. 517 U.S. 456 (1996). The *Armstrong* Court held that it did not, explaining that "[i]n the context of Rule 16, 'the defense' means 'the defendant's response to the Government's case in chief,' or in other words, 'a defense on the merits to the criminal charge itself.'" *United States v. Thomas*, 548 F. Supp. 3d 1212, 1219 (M.D. Fla. 2021) (quoting *Armstrong*, 517 U.S. at 462), *objections overruled*, No. 2:20-cr-122-JLB-NPM, 2021 WL 3857768 (M.D. Fla. Aug. 30, 2021). Evidence is discoverable under Rule 16, therefore, if it is material to a "shield" defense (which "refute[s] the Government's arguments that the defendant committed the crime") but not a "sword" defense (which "challeng[es] the prosecution's conduct of the case"). *Armstrong*, 517 U.S. at 462–63. The Motion to Suppress, for which Defendant seeks to compel the discovery, is a "sword" defense outside the scope of Rule 16. *See e.g.*, *Thomas*, 548 F. Supp. 3d at 1219–21; *United States v. Thompson*, 758 F. App'x 398, 405 (6th Cir. 2018) (first citing *Armstrong*, 517 U.S. at 462; and then citing *United States v. Semrau*, 693 F.3d 510, 529 (6th Cir. 2012)).

Moreover, the Eleventh Circuit has explained that when a defendant seeks disclosure under Rule 16(a)(1)(E)(i), he "must make a specific request" and "'show' 'more

5

than that the [item] bears some abstract logical relationship to the issues in the case.'" *Jordan*, 316 F.3d at 1250–51 (alteration in original) (quoting *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978) (other citations omitted). Speculation and "conclusory argument that the requested item is material to the defense" will not suffice. *United States v. Cruz-Camacho*, 588 F. App'x 886, 889 (11th Cir. 2014) (per curiam) (citing *Jordan*, 316 F.3d at 1250). Defendant argues that "[t]here is a distinct possibility that [he] will benefit from disclosure" of evidence related to Gonzales' statements. (Doc. 35 at 3–4). Defendant's assertion that "[e]vidence related to Gonzales' statements" could be relevant to his privacy interest in the packages is too general and speculative to meet the requisite threshold showing of materiality. *See, e.g.*, *Thomas*, 548 F. Supp. 3d at 1223 ("[Defendant]'s speculation . . . is simply not enough to unlock the door to discovery"); *United States v. Montgomery*, 4:20-cr-32-CDL-MSH, 2022 WL 1062978, at *2–6 (M.D. Ga. Apr. 8, 2022) (denying request for witness interview notes where defendants failed to show production was "required by rule or statute" and made only "speculative assertions" about materiality), *objections overruled*, (Doc. 151) (M.D. Ga. May 18, 2022). Furthermore, the Court's in camera review establishes that Gonzales did not, in fact, state that Defendant was the intended recipient of the packages addressed to Brenda and Karlo Sims. Accordingly, Defendant has not demonstrated that the Government must disclose the requested materials under Rule 16.

To the extent that Defendant seeks the materials as "statements made by prospective government witnesses," or Jencks material, as the Government explained during the hearing, the Government has not indicated that it intends to use Gonzales' statements in its prosecution of Defendant. *See* Fed. R. Crim. P. 16(a)(2); 18 U.S.C. § 3500(a). The Jencks Act—the substance of which is incorporated into Rule 26.2—provides that "no statement or report . . . which was made by a Government witness or prospective Government witness" may "be the subject of subpoena, discovery, or inspection *until* said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a) (emphasis added); *see also Jordan*, 316 F.3d at 1227 n.17 (discussing the government's discovery obligations under Rule 16(a), Rule 26.2, and the Jencks Act). Thus, even if the Government

elects to use Gonzales' statements, it is not required to disclose her statements until after Gonzales testifies. *See United States v. Calderon*, 127 F.3d 1314, 1335 (11th Cir. 1997) ("Our precedent on this issue could not be more clear. The government is not required to disclose any statement [under the Jencks Act] until after the witness has testified on direct." (citations omitted)). Thus, at this time, the Federal Rules of Criminal Procedure and "[t]he Jencks Act provide[] no authority for the Court to grant an early release or disclosure of" Gonzales' statements. *See United States v. Taylor*, No. 1:16-CR-145-13-TWT-JKL, 2018 WL 5091915, at *3 (N.D. Ga. Mar. 23, 2018) (citing *Jordan*, 316 F.3d at 1227 n.17, 1251 & n.78), *R. & R. adopted*, 2018 WL 5084646 (N.D. Ga. Oct. 18, 2018).

### B. *Brady* Material

Alternatively, Defendant argues that Gonzales' statements may be "exculpatory information that is discoverable under *Brady* and its progeny." (Doc. 35 at 3). In *Brady v. Maryland*, the Supreme Court held that the Due Process Clause of the Fifth Amendment requires the Government to disclose evidence that is both "favorable to [the] accused" and "material either to guilt or to punishment." 363 U.S. 83, 87 (1963); *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citations omitted). Both "impeachment evidence" and "exculpatory evidence" are "favorable" under *Brady*. *United States v. Bagley*, 473 U.S. 667, 676 (1985) (first citing *Giglio v. United States*, 405 U.S. 150, 154 (1972); and then citing *Brady*, 373 U.S. at 87). A "defendant's right to the disclosure of favorable evidence, however, does not 'create a broad, constitutionally required right of discovery.'" *Jordan*, 316 F.3d at 1251–52; *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). Rather, when "a defendant makes only a general request for exculpatory material under *Brady*," the government "decides which information must be disclosed," and "[d]efense counsel has no constitutional right to conduct his own search of the [government]'s files to argue relevance." *Ritchie*, 480 U.S. at 59–60 (citing *Weatherford*, 429 U.S. at 559).

During the October 24, 2022 hearing, the Government proffered that Gonzales' statements to law enforcement were not exculpatory *Brady* material and provided an investigative summary of Gonzales' interview. (*See* Doc. 43-1). The Court admitted the

7

summary under seal and reviewed it in camera. The Court also reviewed the full recordings of the interview. Based on the Court's review, the requested discovery does not contain information "that is both favorable to [Defendant] and material to guilt or punishment." *See Ritchie*, 480 U.S. at 57 (citations omitted). Thus, the Government has no obligation to disclose the summary under *Brady*. *See, e.g.*, *United States v. Stokes*, No. 1:14-CR-290-TWT-JKL, 2018 WL 6729999, at *15 (N.D. Ga. Oct. 19, 2018) (denying defendant's request for disclosure of an investigative report after concluding the report was not *Brady* material), *R. & R. adopted*, 2018 WL 6727269 (N.D. Ga. Dec. 20, 2018).

Accordingly, as Defendant has not demonstrated that he is entitled to discovery related to Gonzales' statements under the Federal Rules of Criminal Procedure, *Brady*, or other legal authority, Defendant's Motion to Compel (Doc. 35) is **DENIED**.

## II.     Motion to Suppress

In the Motion to Suppress, Defendant argues that the search of the packages addressed to Karlo Sims and Brenda Sims violated the Fourth Amendment and thus "all evidence, statements, and observations that were obtained as the result of the search" should be suppressed. (Doc. 29 at 2–7; Doc. 33 at 1). Defendant contends that the affidavits of United States Postal Inspector Russell Tabb do not "cite facts establishing reasonable suspicion to detain, nor probable cause to search the packages," and "requests an evidentiary hearing . . . to resolve the issues raised in th[e] motion." (Doc. 29 at 1, 5–6). In response, the Government contends that Defendant's Motion should be denied because: (1) Defendant has not demonstrated standing to challenge the search of the packages, (2) "the totality of the circumstances" established "reasonable suspicion to detain the packages," (3) the affidavits contained sufficient information to support a "finding of probable cause," and (4) even if the affidavits did not establish probable cause, the "good faith exception" to the exclusionary rule applies. (Doc. 30 at 3–9, 11–13; Doc. 34 at 1–3). Because, as discussed below, the Court finds that Defendant has failed to establish that he had a reasonable expectation of privacy in the packages at the time of the search, it does not reach the parties' arguments regarding the sufficiency of the warrants.

The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has repeatedly emphasized that the Fourth Amendment "protects people, not places." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). Thus, an individual "must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018); *see Alderman v. United States*, 394 U.S. 165, 171–72 (1969) ("[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."). To have a cognizable Fourth Amendment interest, the person challenging a search "must have a reasonable expectation of privacy" in the object or area searched. *United States v. Cohen*, 38 F.4th 1364, 1368 (11th Cir. 2022) (citing *Minnesota*, 525 U.S. at 88); *Byrd*, 138 S. Ct. at 1526. "By contrast, an individual's Fourth Amendment rights are *not* infringed—or even implicated—by a search of a thing or place in which he has no reasonable expectation of privacy." *United States v. Ross*, 964 F.3d 1034, 1040 (11th Cir. 2020) (citation omitted).

The question of "whether an individual has a reasonable expectation of privacy in the object of the challenged search" is often referred to as "Fourth Amendment 'standing.'" *Id.*; *Byrd*, 138 S. Ct. at 1530. A defendant challenging a search "bears the burden of establishing 'both a subjective and an objective expectation of privacy' in the area or object searched." *United States v. Campbell*, 434 F. App'x 805, 809 (11th Cir. 2011) (per curiam) (quoting *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006)). The objective component requires the defendant to "prov[e] facts that demonstrate the reasonableness of his expectation of privacy in the searched area." *United States v. Miravalles*, 280 F.3d 1328, 1332 (11th Cir. 2002) (citations omitted). "General or conclusory assertions" are insufficient to establish standing for a motion to suppress. *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (quoting *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)). If the defendant cannot show he has

"a subjective expectation of privacy" that "society is prepared to recognize as objectively reasonable," he lacks standing to seek suppression of the evidence obtained in that search. *Cohen*, 38 F.4th at 1368; *see, e.g.*, *Ross*, 964 F.3d at 1043–45 (affirming denial of a "motion to suppress the drug-related evidence" where the defendant "had no cognizable privacy interest" at the time of the search and thus lacked "Fourth Amendment standing to challenge the [] search").

Defendant argues that he has an expectation of privacy in the subject packages sufficient to establish standing to challenge the search. (Doc. 33 at 1–3). Specifically, Defendant argues that the testimony and exhibits presented at the October 24, 2022 hearing show that he used the delivery address on the packages, 539 12th Avenue, Dawson, Georgia, "as his primary address to receive mail." (*Id.* at 2–3). Generally, "letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy." *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). "Notwithstanding the legitimate expectation of privacy in letters and sealed packages," however, a defendant "who is *neither the sender nor the addressee* of [a] letter will typically be unable to demonstrate a legitimate expectation of privacy in the contents of that letter." *United States v. Waddell*, 840 F. App'x 421, 438–39 (11th Cir. 2020) (per curiam) (emphasis added) (citing *United States v. Smith*, 39 F.3d 1143, 1145 (11th Cir. 1994)). Thus, "when a sealed package is addressed to a party other than the intended recipient, the recipient 'does not have a legitimate expectation of privacy in the package absent other indicia of ownership, possession, or control existing at the time of the search.'" *United States v. Harris*, No. 9:20-cr-80088-RS, 2021 WL 4555836, at *10 (S.D. Fla. Aug. 25, 2021) (first quoting *United States v. Rose*, 3 F.4th 722, 728 (4th Cir. 2021); and then citing *Smith*, 39 F.3d at 1145), *R. & R. adopted*, 2021 WL 4554655 (S.D. Fla. Oct. 5, 2021).

Defendant—who was neither the sender nor the addressee of the searched packages—has not set forth any other indicia of ownership which existed at the time of the search. Defendant asserts that his "ownership interest in the packages" is evidenced by the fact "that the postal workers actually released the USPS Priority Mail Parcels to [him]." (Doc. 33 at 3). Defendant did not, however, present any testimony or other evidence at the

10

October 24, 2022 hearing in support of this argument. Given that the search of the packages occurred before Defendant picked them up from the post office, his subsequent possession does not establish ownership of the packages at the time they were searched. At the hearing, Defendant presented evidence that he received mail at the delivery address—which was his grandmother's home. (*See* Docs. 44-1, 44-2, 44-3). That evidence, standing alone, is insufficient to establish a reasonable expectation of privacy in *all* mail or packages sent to that address. *See Campbell*, 434 F. App'x at 809.

Defendant also argues that "[i]ndividuals may also assert a reasonable expectation of privacy [in] packages addressed to them under fictious names." (Doc. 29 at 4 (citing *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009)); Doc. 33 at 2). As the Eleventh Circuit has explained, however, when a "package is not addressed in the defendant's name," a defendant may demonstrate a reasonable expectation of privacy in that package only if "he establishes a connection between himself and the addressee." *Campbell*, 434 F. App'x at 809 (citing *United States v. Richards*, 638 F.2d 765, 767, 770 (5th Cir. 1981)); *Waddell*, 840 F. App'x at 440. To the extent that Defendant asks the Court to make a connection based on the similarity of the names "Decarlos Williams" and "Karlo Sims," the Court declines to do so. First, the last names "Williams" and "Sims" are in no way similar. Furthermore, the spelling of "Decarlos" and "Karlo" are dissimilar enough that, without more, the Court cannot make that logical leap. Defendant also has presented no evidence to establish—or even argue—that he has used "Brenda Sims" or "Karlo Sims" as a fictious name or that anyone recognized him by either name. Nor has he presented any other evidence showing a connection with the named addressees. *See, e.g. United States v. Robinson*, No. 19-14843, 2022 WL 278043, at *1 (11th Cir. Jan. 31, 2022) (per curiam) (affirming denial of motion to suppress where defendant "never alleged either of the names" listed on the package "was an alias of his" or show any other "connection to either of the addressees"). Thus, Defendant has not met his burden of demonstrating a reasonable expectation of privacy in the packages. *See Campbell*, 434 F. App'x at 809. Accordingly, Defendant has failed to establish Fourth Amendment standing to challenge the search of

11

the packages. Defendant's Motion to Suppress and Amended Motion to Suppress (Docs. 29, 33) are therefore **DENIED**.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress and for Evidentiary Hearing (Doc. 29), Amended Motion to Suppress Addressing Issue of Standing (Doc. 33), and Motion to Compel the Government to Reveal Statements Made to Law Enforcement by Jackie Gonzales (Doc. 35) are **DENIED**.

**SO ORDERED**, this 16th day of February, 2023.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**